UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT F. and APRIL F., Individually and as Guardians *Ad Litem* of G.F., a minor,

                              Plaintiffs,

-against-

NORTH SYRACUSE CENTRAL SCHOOL DISTRICT, NORTH SYRACUSE BOARD OF EDUCATION, ANNETTE SPEACH, in her official capacity as Superintendent of Schools, DAWN HUSSEIN, in her official Capacity as Principal and Committee on Pre-School Education Chair.

                              Defendants.

**COMPLAINT**

Index No.: 5:18-cv-594 (LEK/ATB)

JURY TRIAL DEMANDED

Robert F. and April F. and on behalf of themselves and their minor son, G.F., bring this civil rights action to remedy willful acts of unlawful discrimination by the North Syracuse Central School District, its governing body the North Syracuse Board of Education, Annette Speach, and Dawn Hussein.

**PRELIMINARY STATEMENT**

1. This civil action seeks redress for the deprivation of rights secured by federal law under Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. §794(a).

2. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §729 ("Section 504"), prohibits exclusion from participation in, denial of the benefits of, or discrimination against people with disabilities, in any program or activity receiving Federal financial assistance. The claims set forth herein are brought pursuant to Section 504 and its implementing regulations, 34 C.F.R. §§104.4 and 104.33, each of which authoritatively construes Section 504.

3. Section 504 provides a cause of action for money damages and other relief, where

1

an entity operating a program or activity receiving Federal financial assistance, acting with deliberate indifference, discriminates against a person with a disability, and/or fails to provide or otherwise prohibits reasonable accommodation and/or meaningful access to such program of activity.  Section 504 applies to all public schools that receive Federal financial assistance, as 29 U.S.C.§794(b)(2)(B) defines "program or activity" to include the operations of "local educational agenc[ies]".

4. Defendants, NORTH SYRACUSE CENTRAL SCHOOL DISTRICT, and NORTH SYRACUSE BOARD OF EDUCATION (collectively, "Defendants"), acting with deliberate indifference through one of more of its officials, administrators, agents and/or employees, discriminated against G.F., and failed to provide G.F. either reasonable accommodation or meaningful access to public education as set out more fully below.

## JURISDICTIONAL STATEMENT

5. The jurisdiction of this Court is invoked pursuant to 26 U.S.C. §§ 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Rehabilitation Act of 1973, 42 U.S.C. §729 ("Section 504").

6. Venue is proper under 28 U.S.C. §1391(b) because defendants are state actors and/or reside in the State of New York within the geographical coverage of the United States District Court for the Northern District of New York, and the acts and/or omissions giving rise to the claims herein alleged took place within this District.

7. Declaratory relief is authorized pursuant to 28 U.S.C. §§2201-02.

8. Plaintiffs have fulfilled their obligation to exhaust administrative remedies, if any.

257713

## PARTIES

9. Plaintiffs Robert F. and April F. are residents of the City of Cicero and County of Onondaga in the State of New York. They are natural parents of their son G.F., who, as of the date of this Complaint is 5 years old.

10. At all times relevant times, G.F. has been diagnosed with specific disabilities and certified for special education in the State of New York, and at all relevant times had been entitled to a meaningful access and reasonable accommodations under Federal and State law, including Section 504.

11. Defendant North Syracuse Central School District (the "District"), is a municipality organized and existing pursuant to the New York Education Law, a public school recipient of federal financial assistance, and a public elementary and secondary education system.

12. Defendant North Syracuse Board of Education (the "Board") is the governing body of the School District pursuant to the laws of the State of New York. Upon information and belief, the Board receives federal financial assistance.

13. Under the Rehabilitation Act, *respondeat* superior liability applies to Plaintiffs' claims, therefore, Defendants are liable for the vicarious acts of their employees, including but not limited to Annette Speach and Dawn Hussein.

14. At all relevant times, Defendants were legally responsible for assuring that G.F. was not subjected to discrimination, that he received reasonable accommodations for his educational disabilities, and that he had meaningful access to public education.

## FACTS

15. At all relevant times, Defendants accepted annually federal financial assistance

for use in providing special education in their District.

16. In agreeing to accept annual federal financial assistance (including without limitation during the years 2015 through the present) for use in providing education, including special education programs and services and mental health services to students in the district, Defendants committed to provide every eligible special education student in the district, including G.F., with meaningful access and reasonable accommodation to children with autism spectrum disorders.

17. In agreeing to accept federal financial assistance (including without limitation during the years 2015 through the present) for use in providing special education and services to student in the district, Defendants committed to provide eligible special education students, including G.F., with reasonable accommodations for their educational disabilities and meaningful access to education, and to assure that each such student was not subjected to discrimination.

18. At all relevant times, Defendants knew or should have known that behavioral and mental health issues or comparable services were necessary and available for use with children with autism spectrum disorders.

19. G.F. was diagnosed with Autism Spectrum Disorder with accompanying language impairment and intellectual impairment in December 2014. Specialized evaluations indicated apraxia, delayed fine motor and visual-motor integration and poor instructional control for G.F..

20. Beginning in early 2015 for G.F., and continuing during all relevant times, Defendants knew that G.F. was a student with autism spectrum disorders, including developmental delays and social and emotional impairments.

21. Beginning no later than 2015, and continuing during all relevant times,

257713

Defendants knew that G.F. had neurological impairments, including social and emotional impairments which substantially limited his major life activities, including learning and caring for himself.

22. At all relevant times, G.F. was and was known to Defendants to be an individual with a disability within the meaning of Section 504.

23. At the time of his diagnosis with autism spectrum disorders in 2014, G.F. was non-verbal with extremely limited visual motor, cognitive, and social skills, and was known by Defendants to require and to be entitled to receive intensive early intervention programs, comprised of many hours per week of work with specialized skilled trainers using autism specific programs.

24. At all relevant times, Defendants knew that autism specific programs were available for use with children with autism spectrum disorders including, but not limited to, Applied Behavior Analysis ("ABA") Therapy Services, which was the most effective treatment recommended for G.F..

25. At the time of his initial certification as eligible for special education services in March 2015, G.F. near the age of two and a half years old.

26. In September 2015, G.F. was placed in Defendants' Early Education Program ("EEP"), a half-day integrated special education program at the District's Main Street School.

27. At the time of G.F.'s enrollment in Defendants' program in September 2015, G.F. was capable of learning, including but not limited to the development of effective speech and communications skills, through autism specific programs which were then available. While attending Defendants' EEP, G.F. exhibited minimal social engagement with his peers, toys, and adults, as well as delays in his communication, motor skills, and socialization development.

257713

28. In or about January 2016, Plaintiffs requested Defendants to allow G.F. to receive ABA therapy services in school, but Defendants denied Plaintiffs' request.

29. In the Summer 2017, Plaintiffs enrolled G.F. in a full-day program at Special Preschool Integration for Children's Education ("SPICE"). It was only then that G.F. began receiving full-time autism specific programs at SPICE at Plaintiffs' expense.

30. No in-school autism specific education programs designed to meet G.F.'s individual educational needs were offered by Defendants.

31. During the period of September 2015 through June 2017, G.F. did not achieve his annuals goals in study skills, speech/language, social/emotional/behavioral or motor skills, including cognitive, adaptive and communicative functioning. G.F. also developed behaviors that interfered with learning and functioning.

32. During the years 2015 the present, annual meetings were held for the purpose of designing appropriate educational programs for G.F.. Federal and State law required that program design be accomplished through a structured process that involved the development of written Individualized Education Plans ("IEPs") for G.F. for his upcoming school years. During the years 2015 through 2017, Defendants failed to design appropriate educational programs for G.F..

33. From 2015 through the present, Defendants failed to identify properly G.F.'s educational and related mental health needs.

34. From 2015 through the present, G.F. was subjected to discrimination, denied meaningful access to education, and denied reasonable accommodations for his educational disabilities in ways that included the following:

    a. Defendants failed to provide G.F. with appropriately certified and trained

257713

special education teachers and aides, including teachers and aides trained in providing appropriate educational programs to meet his individual needs, despite the fact that Defendants knew that G.F. required and was entitled to such teachers and aides in order to have meaningful access to education and reasonable accommodation for their educational disabilities.

b. Defendants failed to provide G.F. with appropriate speech therapy or other training with respect to communication skills, speech therapy or other training with respect to communication skills, despite the fact that Defendants knew that G.F. required and was entitled to such services in order to have meaningful access to education and reasonable accommodation for his educational disabilities.

c. Defendants failed to provide G.F. with autism specific services, despite the fact that Defendants knew that G.F. needed and was entitled to appropriate educational programs to meet his individual educational needs in order to accommodate reasonably his educational disabilities and allow him to enjoy meaningful access to education.

d. Defendants did not have anyone trained in ABA Therapy services and failed to consider making ABA services available to G.F. as part of his services for the 2016-2017 and 2017-2018 school years, despite the fact that Defendants knew that G.F. needed and was entitled to such behavioral treatment approach in order to accommodate reasonably his educational disabilities and allow him to enjoy meaningful access to education.

e. Defendants denied G.F. in-school ABA therapy services, despite

    Plaintiffs' offer to pay privately for such services. Defendants denied G.F. in-school ABA services on the grounds that it was against the District's policies and/or teachers' collective bargaining agreement to allow an ABA Therapist to come into the School to work with G.F., despite Defendants lack of ABA services trained professional and failure to make a recommendation for ABA therapy as part of G.F.'s IEP to target behaviors that limited his inability to comply with his instructional control.

f. Defendants denied G.F.'s access to a full-day educational program at the District's Main Street School based on G.F.'s disability because Defendants could not provide a 1:1 teacher's assistant for G.F. on a full-time basis nor did they have an ABA provider working at their school.

g. Defendants failed to take timely and appropriate measures to prevent G.F. from developing negative attitudes and behaviors that interfered with his abilities to learn.

h. Defendants failed to design or implement for G.F. educational programs that addressed appropriately the negative attitudes and behaviors that G.F. developed as a result of Defendants' discrimination and its denial of meaningful access and reasonable accommodation, as aforesaid.

i. Defendants neither offered nor provided G.F. with any mental health services, including ABA services, despite the fact that Defendants knew that G.F. required and was entitled to receive such services in order to have meaningful access to education and reasonable accommodation for his educational disabilities.

    j. Defendants failed to have an expert on educating children with autism or autism spectrum disorders attend any of G.F.'s IEP meeting or otherwise provide information or consultation to Robert F. and April F. When Plaintiffs brought in their own expert to an IEP meeting, Defendants showed gross negligence and/or reckless indifference to such expert's recommendations.

    k. Defendants failed to offer or provide any individual or family therapy, despite the fact that Defendants knew that such therapy was a necessary component to appropriate educational programs for G.F..

35. On or about September 22, 2017, Robert F. and April F. filed a request for an administrative hearing, alleging that G.F. had been denied his rights as required by federal and state law.

36. An administrative hearing was held on January 2 and 3, 2018. At the conclusion of the evidentiary hearing, the Hearing Officer entered his decision, ruling, *inter alia*, that Defendants had denied G.F. educational programs designed to meet his individual needs for the period of 2016 through the present. The Hearing Officer found that Plaintiff's claims for the 2015-2016 school year were time-barred by the IDEA's two-year statute of limitations.

37. Defendants did not appeal the administrative hearing decision.

38. In denying ABA services to G.F. at School, Defendants acted with gross negligence and/or reckless indifference to G.F.'s needs to obtain ABA services to make educational progress and to enjoy meaningful access to education.

## CAUSE OF ACTION
### (Violation of Section 504 of The Rehabilitation Act of 1973)

39. Plaintiffs repeat and reallege all the allegations set forth above.

40.     Section 504 prohibits Defendants from excluding G.F. from the participation in, denying G.F. the benefits of, or subjecting G.F. to discrimination in public education.  For the reasons set forth above, Defendants violated Section 504 and the regulations authoritatively construing section 504, and acted with deliberate indifference, by failing to provide or otherwise prohibiting meaningful access for G.F. to public education, without limitation.

41.     By failing to provide or attempt to provide G.F. with an education in the regular educational environment with the use of supplementary aids and services and baselessly causing Robert F. and April F. to enroll G.F. in out-of-school services so that G.F. can receive meaningful access to education from 2015 through the present, Defendant knowingly, deliberately and wrongfully discriminated against them in violation of Section 504.

42.     During the period 2015 though present, Defendants knowingly, deliberately, and repeatedly failed to provide G.F. with educational programs and related aids and services that were designed to meet his individual education needs as adequately as the needs of non-disabled student of Defendants, in violation of Section 504; 34 C.F.R. §§104.4 and 104.33, each of which authoritatively construes the statute.

43.     During the period 2015 through present, Defendants knowingly, deliberately, and repeatedly failed to determine the educational and related services necessary to meet appropriately G.F.'s individual needs, including any good faith exploration of possible accommodations needed to provide him with meaningful access to public education.

44.     During the period 2015 through present, Defendant knowingly, deliberately, and repeatedly failed to assure that the programs and/or services provided to G.F. resulted in significant learning and conferred a meaningful benefit.

45.     During the period 2015 through present, the reasonable accommodations

necessary to provide G.F. with meaningful access to education including, but not limited to, ABA therapy services, were available but never offered or provided to G.F..

46. During the years at issue here, G.F. was wrongfully and deliberately excluded from and denied all access to related services through Defendants, including social skills trainers, parental training, and psychological therapy.

47. Numerous Defendants' administrators, officials, and employees had the authority and the responsibility to rectify Defendants' failures, as set forth above, but wrongfully, deliberately, and repeatedly failed to take appropriate corrective actions.

48. At all relevant times, Defendants had knowledge that it was substantially likely that its acts and failures to act, as set forth above, would harm G.F.'s federally protected rights to be free from discrimination, and to have meaningful access to education and reasonable accommodation with respect to his educational disabilities. Despite this knowledge, Defendants failed to act upon that likelihood, thereby causing severe and permanent injury to G.F..

49. Defendants' gross negligence and/or deliberate indifference to G.F.'s federally protected rights, as aforesaid, resulted in discrimination against G.F. and denied G.F. reasonable accommodation for their educational disabilities and meaningful access to public education, thereby entitling Plaintiffs to recover special and general damages from Defendants under Section 504 of the Rehabilitation Act in amounts to be shown at trial.

50. Defendants' gross negligence and/or deliberate indifference in violating Plaintiffs' rights under Section 504, as aforesaid, was a substantial factor in causing G.F. to suffer irreversible personal injury and harm, including profound and irreparable injury to his cognitive, adaptive and communicative functioning. As the result of Defendant's wrongful conduct, G.F. will require intensive daily care for the remainder of his life, and he and his parents will be

257713

deprived of the familial relationship they otherwise would have enjoyed.

51. As a result of Defendants' violations of Section 504, G.F. suffered harm as set forth above.

## JURY TRIAL DEMANDED

52. Plaintiff requests a jury trial on all issues raised by the allegations in this Complaint.

**WHEREFORE**, the Plaintiffs request that this Court:

(1) Enter judgment in Plaintiffs' favor against Defendants in an amount of special and general damaged to be proven at trial;

(2) Issue a declaration stating that Defendants violated Plaintiffs' rights under Section 504 of the Rehabilitation Act;

(3) Enter an award of attorney's fees and costs incurred in prosecuting this case; and,

(4) Enter an award for such other equitable and legal relief as the Court may deem just and proper.

DATED: Albany, New York
      May 18th, 2018                    Respectfully Submitted,

                                      COOPER ERVING & SAVAGE LLP

                                      By: /s/ Carlo A. C. de Oliveira
                                            Carlo A. C. de Oliveira
                                            Bar Roll No.: 516271
                                            Attorneys for Plaintiffs
                                            39 North Pearl Street, Fourth Floor
                                            Albany, New York 12207
                                            Telephone: (518) 449-3900
                                            Facsimile: (518) 432-3111
                                            E-mail: Cdeoliveira@coopererving.com

257713