UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT F., *et al.*,

                Plaintiffs,

   -against-                                              5:18-CV-0594 (LEK/ATB)

NORTH SYRACUSE CENTRAL SCHOOL
DISTRICT, *et al.*,

                Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiffs Robert F., April F., and their minor son, G.F., bring this action against North Syracuse Central School District and the North Syracuse Board of Education, alleging discrimination on the basis of disability in violation of § 504 of the Rehabilitation Act, 42 U.S.C. § 794. Dkt. No. 1 ("Complaint").[1] Now before the Court is Defendants' motion for judgment on the pleadings, Dkt. Nos. 6 ("Motion"), 6-1 ("Memorandum"), 12 ("Reply"), which Plaintiffs oppose, Resp.

For the reasons that follow, Defendants' Motion is denied.

**II.    BACKGROUND**

    **A.  Factual Background**

"In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so

---

[1] Plaintiffs also initially brought, but have since withdrawn, claims against Superintendent Annette Speach and Principal Dawn Hussein. Dkt. No. 10 ("Response").

long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). The facts in this section are therefore drawn from the following documents: (1) the Complaint; (2) Defendants' answer, Dkt. No. 5 ("Answer"); and (3) the exhibits attached to the Answer, Dkt. Nos. 5-1 ("November 2017 Impartial Hearing Request"), 5-2 ("November 2017 District Response"), 5-3 ("December 2017 Impartial Hearing Request"), 5-4 ("December 2017 District Response"), 5-5 ("IHO Order"), 5-6 ("District Policy"). As required when "evaluating a Rule 12(c) motion, the [C]ourt [will] view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989).

Robert F. and April F. are the parents of G.F., who was five years old at the time of the filing of the Complaint. Compl. ¶ 9. Defendants are a public school district that receives federal financial assistance for use in providing special education. Id. ¶ 15.

G.F. was diagnosed with Autism Spectrum Disorder ("ASD") "with accompanying language impairment and intellectual impairment" in December 2014. Id. ¶ 19. "Specialized evaluations" at that time indicated "apraxia, delayed fine motor and visual-motor integration, and poor instructional control for G.F." Id. G.F. was non-verbal "with extremely limited visual motor, cognitive, and social skills." Id. ¶ 23.

Beginning in early 2015, Defendants "knew" that G.F. had ASD, "developmental delays, and social and emotional impairments." Id. ¶ 20. Beginning no later than 2015, Defendants "knew that G.F. had neurological impairments, including social and emotional impairments which substantially limited his major life activities, including learning and caring for himself."

2

Id. ¶ 21. Defendants also "knew" that Applied Behavior Analysis ("ABA") was "the most effective treatment recommended for G.F." Id. ¶ 24.

In March 2015, G.F., then two-and-a-half years old, was initially certified for special education services. Id. ¶ 25. In September 2015, G.F. was placed in Defendants' Early Education Program ("EEP"), a half-day integrated special education program at Defendant's Main Street School. Id. ¶ 26. At the time of his enrollment, G.F. "was capable of learning . . . effective speech and communication skills, through autism-specific programs which were then available." Id. ¶ 27. While attending the EEP, G.F. "exhibited minimal social engagement with his peers, toys, and adults, as well as delays in his communication, motor skills, and socialization development." Id.

From 2015 to the present, Defendants have held annual meetings to develop Individualized Education Plans ("IEPs") and goals for G.F. for each upcoming school year. Id. ¶ 32.

During the period September 2015 through June 2017, G.F. did not achieve his annual goals in study skills, speech/language, social/emotional/behavioral, or motor skills, including cognitive, adaptive, and communicative functions. Id. ¶ 31. Rather, G.F. "developed behaviors that interfered with learning and functioning." Id.

In January 2016, Plaintiffs asked Defendants to "allow G.F. to receive" ABA therapy services at school, but Defendants denied the request. Id. ¶ 28. According to Plaintiffs, "[n]o in-school autism-specific education programs designed to meet G.F.'s individual educational needs were offered by Defendants." Id. ¶ 30.

In the summer of 2017, Plaintiffs enrolled G.F. in a full-day program at Special Preschool Integration for Children's Education ("SPICE"), receiving "full-time autism-specific programs" at Plaintiffs' expense. Id. ¶ 29.

Plaintiffs allege that G.F. was "subjected to discrimination, denied meaningful access to education, and denied reasonable accommodations for his educational disabilities," Id. ¶ 34, in the following ways:

- Defendants failed to provide G.F. with "appropriately certified and trained" special education teachers and aides, or with "appropriate educational programs to meet his individual needs," id. ¶ 34(a);

- Defendants failed to provide G.F. with "appropriate" speech therapy, id. ¶ 34(b);

- Defendants failed to provide G.F. with autism-specific services, id. ¶ 34(c);

- Defendants did not have anyone trained in ABA therapy and failed to consider making ABA services available to G.F. during the 2016–17 and 2017–18 school years, id. ¶ 34(d);

- Defendants denied G.F. in-school ABA therapy services, despite Plaintiffs' offer to pay for them, because of Defendants' collective bargaining agreement with teachers, id. ¶ 34(e);

- Defendants denied G.F. access to a full-day educational program at Main Street School in not providing a 1:1 teacher's assistant or an ABA provider, id. ¶ 34(f);

- Defendants failed to "take timely and appropriate measures" to "prevent G.F. from developing negative attitudes and behaviors that interfered with" his ability to learn, id. ¶ 34(g);

- Defendants failed to design or implement educational programs for G.F. that addressed "appropriately" the "negative attitudes and behaviors" that G.F. "developed as a result of Defendants' discrimination," id. ¶ 34(h);

- Defendants failed to provide "any mental health services, including ABA services," id. ¶ 34(i);

- Defendants failed to have an expert on educating children with autism either attend any of G.F.'s IEP meetings or otherwise provide information or consultation to Robert F. and April F. Further, when the parents brought an expert to an IEP

4

> meeting, Plaintiffs allege that Defendants "showed gross negligence and/or reckless indifference to such expert's recommendations," id. ¶ 34(j); and

- Defendants failed to provide any individual or family therapy. Id. ¶ 34(k).

Plaintiffs allege that Defendants thereby discriminated against G.F., acting with "gross negligence" and "deliberate indifference by failing to provide or otherwise prohibiting access for G.F. to public education." Id. ¶¶ 34, 49–50. Plaintiff further alleges that Defendants' failure to provide G.F. with proper programs, aids, ABA therapy, "social skills trainers," and "psychological training" was done "knowingly, deliberately, and repeatedly." Id. ¶¶ 41–48. Finally, Plaintiff alleges that Defendants did not conduct "any good faith exploration of possible accommodations needed to provide him with meaningful access to public education." Id. ¶ 43.

### B. Procedural Background

On September 22, 2017, Plaintiffs filed a request for an administrative hearing pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, challenging G.F.'s pre-school special education program for the 2015–16 and 2016–17 school years. Id. ¶ 35; IHO Order at 2.[2] Plaintiffs later amended their hearing request in October, November, and December 2017. IHO order at 2; Nov. 2017 Impartial Hr'g Req.; Dec. 2017 Impartial Hr'g Req.

Plaintiffs' November and December 2017 Impartial Hearing Requests (both attached to Defendants' Answer), in addition to adding claims related to G.F.'s 2017–18 school year, alleged that G.F.'s IEPs lacked the following necessary items: a full-day program, Nov. 2017 Impartial Hr'g Req. at 7–8; ABA therapy, id. at 8; a functional behavioral assessment ("FBA"), id. at 9–10; appropriate speech/language therapy, id. at 11; parent training/counseling, id. at 12; and a least restrictive environment, id. at 7–8. In addition, Plaintiffs alleged that Defendants failed

---

[2] The cited page numbers for documents refer to those generated by the Court's electronic filing system ("ECF")

even to carry out G.F.'s existing IEPs, by failing to provide (1) a "certified and qualified special education teacher" for months when G.F.'s special education teacher had an extended illness during which uncertified substitute teachers filled in; and (2) a 1:1 teaching assistant. Id. at 7–8, 12–14; Dec. 2017 Impartial Hr'g Req. at 4–5; IHO Order at. 28–29.

An Impartial Hearing Officer ("IHO") held hearings to evaluate Plaintiffs' claims on January 2 and 3, 2018. Compl. ¶ 36; IHO Order at 3. In his January 31, 2018 decision, the IHO held that Plaintiffs' complaints about G.F.'s 2015–16 IEP were time barred. IHO Order at 11–13. The IHO also found, with regard to the 2016–17 and 2017–18 school years, that Defendants had not violated IDEA's least restrictive environment requirement, and were not required to provide G.F. with full-day instruction in 2016–17 because of his age at the time**.** Id. at 26, 30.

However, the IHO ruled for the Plaintiffs in all other respects. Id. at 13–15, 19, 25–27, 29–30. In finding that Defendants violated IDEA by failing to provide an FBA, the IHO noted that the Court of Appeals for the Second Circuit has treated the omission of an FBA as a "serious procedural violation" of the IDEA. Id. at 16–17 (citing L.O. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 113 (2d Cir. 2016). As to the substitute teachers provided during G.F.'s special education teacher's ninety-two day absence in 2016–17, the IHO found that, while Defendants "apparently operated in good faith," for forty-seven of those days, the substitute was neither a certified special education teacher nor a certified teacher. Id. at 28–29. According to the IHO, Defendants' violations denied G.F. a free appropriate public education ("FAPE") for the 2016–17 and 2017–18 school years. The IHO therefore ordered Defendants to provide (1) $1,538 in reimbursement to Plaintiffs for out-of-pocket therapy expenses; (2) 240 hours of compensatory 1:1 ABA therapy; (3) daily 45-minute ABA therapy services; (4) a 1:1 teaching assistant; (5) ABA training

for Defendants' staff and G.F.'s parents; and (6) updated evaluations of G.F.'s speech/language skills. Id. at 32-34. Neither party appealed the IHO Order. Mot. at 8.

**III.     LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Granting such a motion "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). "The standard for addressing a Rule 12(c) motion . . . is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Thus, a complaint should be dismissed if it fails to "contain sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On the other hand, if the factual allegations "raise a right to relief above the speculative level," it should not be dismissed. Twombly, 550 U.S. at 544. In a 12(c) motion, however, the Court may consider "the complaint, the answer, [and] any written documents attached to them." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011). "The granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." Prowley v. Hemar Ins. Corp. of Am., No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010).

**IV.     DISCUSSION**

In their Motion, Defendants raise two arguments. First, they contend that Plaintiffs fail to state a claim upon which relief may be granted because their Rehabilitation Act claim merely restates the IDEA claims that were the subject of the prior administrative hearing. Mem. at 10–15. Second, Defendants argue that, to the extent the Complaint asserts claims that are not

7

duplicative of the IDEA claims previously adjudicated, they have not been administratively exhausted. Id. at 16–18.

## A. Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). IDEA's purpose, meanwhile, is to ensure students with disabilities receive a FAPE in the least restrictive environment. § 1400(d)(1)(A); Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 371 (2d Cir. 2006). "IDEA and Section 504 are complementary, but they address different injuries and thus require different proof. Specifically, Section 504 offers relief from discrimination, whereas IDEA offers relief from inappropriate educational placement, regardless of discrimination." Gabel ex rel. L.G. v. Bd. of Educ., 368 F. Supp. 2d 313, 333 (S.D.N.Y. 2005).

"A plaintiff may assert a Section 504 claim in conjunction with an IDEA claim on the theory that he has been denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive." D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ., 950 F. Supp. 2d 494, 517–18 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). "To recover under the Rehabilitation Act, there must be evidence that: (1) the student is disabled; (2) the student is otherwise qualified to participate in school activities; (3) the school or the board receives federal financial assistance; and (4) the student was excluded from participation in programs at, denied the benefits of, or subject to discrimination at, the school on the basis of her disability." Id. at 518 (quoting Schreiber v. E. Ramapo Cent. Sch. Dist., 700

8

F.Supp.2d 529, 564 (S.D.N.Y. 2010)). "Since Section 504 relief is conditioned on a showing of discrimination, it requires something more than proof of a mere violation of IDEA—i.e., more than a faulty IEP." Gabel, 368 F.Supp.2d at 334 (citing J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 70 (2d Cir. 2000)). Rather, a plaintiff must prove some additional level of "intentional discrimination," which "may be inferred when a school district acts with gross negligence or reckless indifference in depriving a child of access to a FAPE." Id. In other words, "a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment." Id. (citing Butler v. South Glens Falls Cent. Sch. Dist., 106 F.Supp.2d 414, 420 (N.D.N.Y.2000)). The plaintiff is not required to show personal animosity or ill will. Rather, intentional discrimination may be inferred when a school district acts with gross negligence or reckless indifference in depriving a child of access to a FAPE. R.B. ex rel L.B. v. N.Y.C. Bd. of Educ., 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000); Butler, 106 F. Supp. 2d at 420.

Defendants argue that Plaintiffs have not adequately alleged bad faith or gross misjudgment to plead a § 504 claim. Mot. at 11–16. The Court disagrees.

Gross misjudgment or bad faith may be found when a defendant takes action to provide a disabled student with fewer services than had previously been deemed necessary. Gabel, 368 F. Supp. 2d at 336. Here, reading the pleadings in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989), the Court finds alleged actions that may rise to the level of gross negligence or reckless indifference sufficient to support a claim of discrimination under section 504. In particular, the IHO Order indicates that, despite an IEP requiring special education for G.F., Defendants provided him with a substitute teacher who was neither a special education teacher nor even a certified teacher for a period of forty-seven school days, almost one-quarter of the 2016–17

9

school year. IHO Order at 28–29, Compl. ¶ 34(a). See S.W. v. Warren, 528 F. Supp. 2d 282, 291 (S.D.N.Y. 2007) (denying summary judgment to defendant school district where the district deprived children of the number of hours of service their IEPs required because it lacked sufficient service providers). In addition, the pleadings include allegations of Defendants removing the 1:1 teaching assistant from G.F.'s 2017–18 IEP without parental consent to this "important decision," IHO Order at 15, Compl. ¶ 34(f). See Gabel, 368 F. Supp. 2d at 336 (finding that a school district's recommendation that a student should be assigned to a program with an 8:1:1 student-teacher ratio even though the student's special education committee had recommended a program with a 12:1:1 ratio "may in itself constitute the type of gross negligence or reckless indifference Section 504 is meant to address"). The pleadings also detail how Defendants omitted an FBA from G.F.'s IEP despite more than one year with little or no progress in meeting goals, a "serious" procedural error. IHO Order at 17; Compl. ¶ 43. See L.O., 822 F.3d at 113 (finding that failure to provide FBA is a "serious procedural violation" because it prevents a school from "obtaining information about the student's behaviors, leading to their being addressed in the IEP inadequately or not at all"). As such, the Court finds that Plaintiffs have stated a plausible claim that Defendants acted with gross misjudgment, and Plaintiffs' Rehabilitation Act claim survives the Motion.

### B. Exhaustion

Where a plaintiff brings a claim under either the ADA or the Rehabilitation Act that seeks relief available under the IDEA, he or she must first exhaust the administrative remedies under the IDEA. Hope v. Cortines, 69 F.3d 687, 688 (2d Cir.1995). "Failure to exhaust the [IDEA's] administrative remedies deprives the court of subject matter jurisdiction." Cave v. E. Meadow

Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (citing Polera v. Bd. of Educ., 288 F.3d 478, 483 (2d Cir. 2002)).

Under IDEA, parents of disabled children are guaranteed "a variety of procedural safeguards," Mr. P v. West Hartford Bd. of Educ., 885 F.3d 735, 741 (2d Cir. 2018), including the right "to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" Cave, 514 F.3d at 245 (quoting 20 U.S.C. § 1415(b)(6)(A)). These administrative proceedings are adjudicated and conducted in accordance with the laws of each state. § 1415(f)–(g).

New York has opted for a two-tier administrative system to review IEPs. Cave, 514 F.3d at 245. First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. Id. That decision can then be appealed to a state review officer ("SRO") of the New York Education Department. Id. "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." Id. (citing § 1415(i)(2)(A)). However, for exhaustion purposes, a party need not appeal an IHO decision favorable to him, since under IDEA only a "party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 1415(g)(1).

1. *Applicability*

The administrative exhaustion requirement applies to all suits that "seek relief for the denial of a FAPE," including those brought pursuant to the Rehabilitation Act. Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 752 (2017) (citing § 1415(*l*)). "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the

11

plaintiff's complaint." Id. "[I]f, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." Id. at 754; see also L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x. 56, 57 (2d Cir. 2016) (summary order) ("[I]f the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required." (quoting Polera, 288 F.3d at 481, 487–88)). Fry suggests that courts should ask a pair of questions to determine whether the "gravamen" of a plaintiff's complaint concerns the denial of a FAPE: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" 137 S. Ct. at 756. If the answer to both of these questions is no, the complaint is likely about the denial of a FAPE. Id.

In the instant case, the answer to both questions is no. Plaintiffs could not have brought a comparable claim against a public theater or library or any other public facility. An adult at the school could not have pressed the same grievance as Plaintiffs. The gravamen of Plaintiffs' case is the provision of educational services to a disabled student. Accordingly, the exhaustion requirement applies to Plaintiff's Rehabilitation Act claim.

While monetary damages are unavailable in an IDEA administrative proceeding, Plaintiffs' request for monetary damages here does not alter the calculus regarding exhaustion, contrary to Plaintiffs' argument. Resp. at 10–11. See Polera, 288 F.3d at 487 ("Courts in the Second Circuit have . . . not permitted [plaintiffs] to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages."); see also Fry, 137 S. Ct. at 752 n.4 ("[W]e leave for another day a further question about the meaning of § 1415(*l*): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—

12

here, money damages for emotional distress—is not one that an IDEA hearing officer may award?").

### 2. Analysis

The facts alleged in the Impartial Hearing Requests are the same facts that support Plaintiffs' Rehabilitation Act claim here: the failure to provide a properly certified special education teacher for forty-seven days, Nov. 2017 Impartial Hr'g Req. at 7–8, 12–14; IHO Order at 28–29; Compl. ¶ 34(a); Defendants' unilateral removal of the 1:1 teaching assistant from G.F.'s 2017–18 IEP, Nov. 2017 Impartial Hr'g Req. at 7–8, 12-14, Dec. 2017 Impartial Hr'g Req at 4–5; IHO Order at 15; Compl. ¶ 34(f); and the omission of an FBA from G.F.'s IEP, Nov. 2017 Impartial Hr'g Req. at 9–10; IHO Order at 17.

Nevertheless, Defendants argue that Plaintiffs did not exhaust their Rehabilitation Act claim because Plaintiffs did not, in their Impartial Hearing Requests, explicitly cite the Rehabilitation Act or mention "disability discrimination," "bad faith," "reckless indifference," or "gross negligence." Reply at 13. The Court disagrees. Plaintiffs need not explicitly cite the Rehabilitation Act or argue "bad faith" before the IHO in order to exhaust their Rehabilitation Act claim.

Congress has codified the non-IDEA claim exhaustion requirement at § 1415(*l*):

> "'Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], <u>the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]</u>.'"

Fry, 137 S. Ct. at 753, quoting § 1415(*l*) (emphasis added).

When analyzing exhaustion within the context of a non-IDEA claim, therefore, the Court must assess what a Plaintiff would "be required" to do in IDEA processes if "the action [had]

13

been brought under [the IDEA]." Id. IDEA's administrative processes require a plaintiff to present a claim before a hearing officer detailing their FAPE denial, and "IDEA's administrative procedures test whether a school has met that obligation—and so center on the Act's FAPE requirement." Fry, 137 S. Ct. at 753. "Any decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education.'" Fry, 137 S. Ct. at 754 (quoting 1415(f)(3)(E)(i)). "If [an] accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot." Id. Whether a school denied FAPE because of intentional discrimination, bad faith, or innocent mistake does not matter in an IDEA claim, and Plaintiffs would not have to allege any state-of-mind to exhaust if this action "had been brought under the IDEA." 1415(*l*); see Gabel, 368 F. Supp. 2d at 333 ("IDEA offers relief from inappropriate educational placement, regardless of discrimination.")

That analytical framework aligns with the purposes of the exhaustion requirement. "The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." Polera, 288 F.3d at 487. The exhaustion requirement "prevents courts from undermining the administrative process," which is "uniquely well suited to review the content and implementation of IEPs . . . and to determine what changes, if any, are needed" to provide FAPE. Id., 288 F.3d at 487.

In this case, Plaintiffs raised all of the issues relevant to G.F.'s FAPE and IEPs and gave Defendants and the IHO the opportunity to determine whether changes in his education program were needed to secure a FAPE. Apprised of those facts, the IHO granted considerable relief to "correct shortcomings in [G.F.'s] educational programs," Polera, 288 F.3d at 487.

Requiring that allegations of bad faith or discriminatory motive be raised before an IHO to exhaust a Rehabilitation Act claim would distract the IHO from his statutorily mandated focus "on the [IDEA's] FAPE requirement." Fry, 137 S. Ct. at 753. It would, therefore, "undermine," Polera, 288 F.3d at 487, the IDEA administrative process.

Exhaustion "furthers development of a complete factual record and promotes judicial efficiency." Polera, 288 F.3d at 487. But nothing in IDEA suggests that it enlists state agencies to develop a record on issues extraneous to FAPE, such as state-of-mind, for the sole benefit of federal courts in possible later litigation.

In further support of their argument, Defendants point to three district courts in this circuit that have held that they lack jurisdiction over § 504 claims where the plaintiff pursued administrative remedies for IDEA claims but failed to assert § 504 claims during the administrative process. Reply at 11–13; see John M. v. Brentwood Union Free Sch. Dist., No. 11-CV-3634, 2015 WL 5695648, at *12–13 (E.D.N.Y. Sept. 28, 2015); M.A. v. N.Y. Dep't of Educ., 1 F. Supp. 3d 125, 144 (S.D.N.Y. 2014) (adopting report and recommendation); P. v. Greenwich Bd. of Educ., 929 F. Supp. 2d 40, 50–51 (D. Conn. 2013). The Court finds these cases unpersuasive.

In Greenwich, as here, the plaintiffs presented the factual basis for their Rehabilitation Act claim during the administrative proceedings, but neglected to mention the Act itself, or bad faith. 929 F. Supp. 2d at 50–51. On that basis alone, the Greenwich court found that the plaintiffs had not exhausted their Rehabilitation Act claim. For support, the court cited Mr. & Mrs. D. v. Southington Board of Education, 119 F. Supp. 2d 105, 115–16 (D. Conn. 2000). Greenwich, 929 F. Supp. 2d at 50–51. However, Mr. & Mrs. D. only held that Rehabilitation Act claims require exhaustion "to the same extent as would be required had the action been brought under [IDEA],"

15

119 F. Supp. 2d at 115 (citing § 1415(f)). The case does not suggest that a plaintiff must explicitly cite the Rehabilitation Act or allege state of mind in the administrative process to satisfy exhaustion. As explained earlier, Plaintiff would not have had to allege these elements had the action been brought under the IDEA. And in fact, Mr. & Mrs. D. suggests that when a plaintiff has raised the facts underlying his Rehabilitation Act claim in a prior administrative proceeding, exhaustion has occurred. See Mr. & Mrs. D., 119 F. Supp. 2d at 116–17 ("To the extent that [the plaintiffs' Rehabilitation Act claims] may involve facts not brought up under the hearing under the IDEA, they should be the subject matter of an administrative proceeding before being reviewed by the court."). In light of § 1415(*l*)'s exhaustion language, the Supreme Court's subsequent decision in Fry, and Greenwich's misreading of Mr. & Mrs. D., the Court is unpersuaded by Greenwich.

Both John M. and M.A. relied on Greenwich despite its faulty reasoning, and therefore are unconvincing on the same basis. Further, the plaintiffs in both John M. and M.A. did not contest that they failed to exhaust their Rehabilitation Act claims, so the issue was not fully briefed. John M., 2015 WL 5695648, at *12–13; M.A., 1 F. Supp. 3d at 144. And in M.A., as in Mr. & Mrs. D., the plaintiffs had not even alleged in their administrative process the facts underlying their later Rehabilitation Act claims in federal court. Compare M.A., 1 F. Supp. 3d at 129 (listing Rehabilitation Act claims in federal suit) with M.A. v. N.Y. Dep't of Educ., No. 10-CV-3646 (S.D.N.Y. Sept. 5, 2013) (Report-Recommendation), at 11–13 (listing factual allegations in the plaintiffs' administrative complaint).

Here, Plaintiffs alleged in their Impartial Hearing Requests the FAPE-related facts that support their Rehabilitation Act claim now before this Court. They have therefore abided by 1415(*l*) and properly exhausted their Rehabilitation Act claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action.

**IT IS SO ORDERED.**

DATED: March 13, 2019
Albany, New York

Lawrence E. Kahn
U.S. District Judge