UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ROBERT F., *et al.*,

                  Plaintiffs,

      -against-                          5:18-CV-00594 (LEK/ATB)

NORTH SYRACUSE CENTRAL
SCHOOL DISTRICT, *et al.*,

                  Defendants.

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.     INTRODUCTION**

      Plaintiffs Robert F. and April F. on behalf of themselves and their minor son, G.F., bring this action against North Syracuse Central School District ("School District") and the North Syracuse Board of Education, alleging discrimination on the basis of disability in violation of § 504 of the Rehabilitation Act, 42 U.S.C. § 794. Dkt. No. 1 ("Complaint"). Plaintiffs allege § 504 claims in relation to: (1) the denial of autism-related services (2) the absence of a certified special teacher in G.F.'s preschool classroom for approximately one quarter of the 2016-2017 school year; (3) the Committee on Preschool Education's ("CPSE") removal of the 1:1 Teaching Assistant from G.F.'s preschool individualized education program ("IEP") without parental consent during the 2017-2018 school year; (4) the CPSE's delay in conducting a Functional Behavioral Assessment ("FBA") of G.F. during the 2017-2018 school year, and (5) the failure to provide G.F with an augmented assistive communication device. Compl. at 10–12.

      Plaintiffs move for summary judgement, arguing that the record demonstrates that Defendants' conduct was grossly negligent and deliberately indifferent to G.F's rights under § 504. <u>See</u> Dkt. Nos. 84 ("Plaintiffs' Summary Judgment Motion"); 84-1 ("Plaintiffs'

Memorandum of Law"); 84-70 ("Plaintiffs' Statement of Material Facts" or "Plaintiffs' SMF").

Specifically, Plaintiffs claim that Defendants knowingly denied G.F. necessary services and

failed to implement G.F.'s IEPs. See generally Pls.' Mem. of Law. Defendants responded to

Plaintiffs' motion and have cross-moved for summary judgement. See Dkt. Nos. 91

("Defendants' Cross-Motion for Summary Judgment"); 91-1 ("Defendants' Response

Memorandum"); 91-10 ("Defendants' Statement of Material Facts" or "Defendants' SMF"); 95

("Plaintiffs' Response Memorandum"); 99 ("Defendants' Reply"). For the reasons that follow,

the Court grants Plaintiffs summary judgment on the claim pertaining to the reduction of speech

therapy, denies the remainder of Plaintiffs' Summary Judgment Motion, and denies Defendants'

Cross-Motion for Summary Judgment in its entirety.

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted.

Robert F. and April F. are the natural parents of their son, G.F. See Pls.' SMF ¶ 1; Defs.'

SMF ¶ 1. The School District is a public school district that receives federal financial assistance

for providing special education. Pls.' SMF ¶ 3; Defs.' SMF ¶ 3. G.F. was diagnosed with Autism

Spectrum Disorder ("ASD") with accompanying language impairment and intellectual

impairment in December 2014. Pls.' SMF ¶ 22; Defs.' SMF ¶ 22. G.F. has been eligible for

special education services since March 2015, when he was around two and a half years old. Pls.'

SMF ¶ 22; Defs.' SMF ¶ 22. Since then, Defendants have held annual meetings to develop IEPs[1]

and goals for G.F. for each upcoming school year. See Pls.' SMF ¶ 32; Defs.' SMF ¶ 32.

---

[1] The Individuals with Disabilities Education Act ("IDEA") offers states federal funds to assist in educating children with special needs. Endrew F. v. Douglas County School District RE-1, 137 S. Ct. 988, 993 (2017) (citing 20 U.S.C. § 1400 et seq). In exchange, a state agrees to provide a free appropriate public education ("FAPE") to all eligible children. Id. (citing § 1412(a)(1)). Services are provided to an IDEA eligible child in conformity with that child's IEP. Id. at 994. The IEP is a comprehensive plan prepared by a child's "IEP Team," which includes

G.F. was first placed in the Defendants' Early Education Program ("EEP"), a half-day integrated special education program for the 2015-2016 school year. Pls.' SMF ¶ 33; Defs.' SMF ¶ 33. There, he received speech language therapy four times per week, counseling therapy two times per week, occupational therapy two times per week, and the assistance of a 1:1 teaching assistant thirty minutes per day. Dkt. No. 91-34 ("Hussein Dec.") ¶ 11. Plaintiffs allege that G.F did not meet his annual goal on his IEP for language and speech. Pls.' SMF ¶ 37. On his annual review summary report from that year, it was reported that G.F. was "essentially nonverbal," he did not interact with his peers, and demonstrated repetitive behaviors and wandered around the classroom. Pls.' SMF ¶ 90; Defs.' SMF ¶ 90.

While G.F presented various autism-related behaviors that interfered with his learning, Defendants did not recommend an FBA or a Behavioral Intervention Plan ("BIP") to address targeted behaviors. Pls.' SMF ¶ 31; Defs.' SMF ¶ 31.[2] Applied Behavioral Therapy ("ABA") was also not recommended for G.F. Pls.' SMF ¶ 31; Defs.' SMF ¶ 31.[3]

**A. 2017-2018 School Year**

---

teachers, school officials, and the child's parents. Id. It is typically a multi-page report describing how specific special education services and other related services will be provided to the student. Id.

[2] An FBA is a means of assessing a child's problematic behavior in order to understand the cause of that behavior and establish a successful way of intervening and resolving the behavior. D.S. v. Trumbull Bd. of Educ., 975 F.3d 152, 164 (2d Cir. 2020). Individualized education program teams often employ FBAs and BIPs as positive behavioral interventions and supports where the child's behavior impedes the child's learning or that of others. 20 U.S.C. § 1414(d)(3)(B)(i).

[3] ABA is the most well-researched and validated general approach of treatment for children with autism spectrum disorder. Pls.' SMF ¶ 6; Defs.' SMF ¶ 6. Defendants dispute applicability of ABA claims. Defendants allege documents referenced by Plaintiffs are applicable to early intervention services for children ages 0–3 and not applicable to preschool special education services pursuant to Part B of the IDEA. Defs.' SMF ¶ 6–9.

Plaintiffs enrolled G.F. in the Special Preschool Integration for Children's Education ("SPICE") program for the 2017-2018 school year. Pls.' SMF ¶ 65. This was a full-day, 8:1:3[4] special class in an integrated setting. Dkt. No. 84-34 ("IHO Decision") at 7. Plaintiffs claim that this was the only program that would allow Plaintiffs' private ABA provider to provide service in the school. Pls.' SMF ¶ 65. During the period between August 2017 and June 2018, while G.F. was attending SPICE, his hours of direct ABA therapy increased from 10 to 20 hours per week because SPICE allowed G.F. to receive one-on-one direct ABA therapy in school. Id. ¶ 69; Defs.' SMF ¶ 69. At SPICE, the School District removed the 1:1 teaching assistant from G.F's IEP entirely. Pls.' SMF ¶ 97; Defs.' SMF ¶ 97. Dr. Danielle Bronk was invited to attend the CPSE meeting on October 10, 2017 to discuss G.F.'s neurodevelopmental evaluation completed in June 2017. Pls.' SMF ¶ 66; Defs.' SMF ¶ 66. During that meeting, Dr. Bronk stated that ABA therapy was the most appropriate treatment for G.F. and that ABA therapy should be provided to G.F. in the school. Pls.' SMF ¶ 67; Defs.' SMF ¶ 67.

**B. Administrative Hearing Before Impartial Hearing Officer**

On September 22, 2017, Plaintiffs filed a request for an impartial hearing alleging that G.F. had been denied his rights pursuant to the IDEA. Pls.' SMF ¶ 84; Defs.' SMF ¶ 84. On January 31, 2018, an Impartial Hearing Officer ("IHO") ruled that the programs set forth in G.F.'s preschool IEPs denied him a FAPE. Pls.' SMF ¶ 85; Defs.' SMF ¶ 85.

Specifically, the IHO found the following: (1) During the 2015-2016 school year, G.F.'s behaviors could have been addressed through an FBA and BIP that could have helped G.F. succeed; (2) During the 2016-2017 school year, Defendants failed to include an FBA and BIP in G.F.'s IEP, failed to provide the required ABA therapy as part of his IEP, a full-day program and

---

[4] An 8:1:3 special education setting means a teacher to student ratio that involves eight students to one teacher, and three paraprofessionals.

a 1:1 teaching assistant throughout the day as required; (3) Defendants failed to provide a special

education teacher to G.F. for 47 school days during the 2016-2017 school year. IHO Decision at

14–15. In finding that Defendants violated IDEA by failing to provide an FBA, the IHO noted

that the Second Circuit has treated the omission of an FBA as a "serious procedural violation" of

the IDEA. Id. at 16 (citing L.O. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 113 (2d Cir. 2016)). An

FBA and resulting BIP could have been implemented to target problem behaviors, such as

persistent wandering around the classroom, to help the student succeed. Id. at 14–15. The

problematic behavior continued throughout 2016-2017. See id. at 20–24. When the CPSE met on

March 31, 2017, it was incumbent on them to reassess whether an FBA should be developed. Id.

Again, it failed to develop an FBA—despite the fact that G.F.'s wandering, perseveration, and

repetitive behaviors continued. Id.

The IHO concluded that G.F. needed ABA intervention and that its omission denied the

student a FAPE when the CPSE recommended a continuation of his 2015-2016 special class

integrated setting with related services for the 2016-2017 school year. Id. at 28–29. Since ABA

therapy services and goals more specifically tailored to G.F.'s language and behavioral needs

were absent from the 2017-2018 proposed IEP, this IEP also was inappropriate and denied G.F. a

FAPE. Id. The IHO ordered Defendants to, among other things, include at least one 45-minute

session of direct ABA therapy to G.F. in school daily provided by a licensed behavior analyst,

the support of a 1:1 teaching assistant trained in the delivery of ABA therapy, and ABA training

to the staff working directly with G.F. Id. at 33.

Defendants also failed to provide G.F. an educational program taught by a certified

special education teacher for almost one-quarter of the 2016-2017 school year. Id. at 27. The

IHO concluded that "such a failure to implement an IEP is more than de minimus [sic.]" because

"the failure to provide a special education teacher for 47 school days is . . . at the heart of the New York Educational scheme for provision of appropriate educational services to students with disabilities." Id.[5] The IHO also found that Defendants failed to provide G.F. a full-day program during the 2016-2017 school year which the CPSE had concluded was necessary for G.F. given his disability. Id. at 24–25.

### C. Procedural History

Plaintiffs commenced this action on May 18, 2018, prior to the conclusion of the 2017-2018 school year. See Docket. On July 31, 2018, the School District moved to dismiss the Complaint on the grounds that Plaintiffs' claim of disability discrimination was duplicative of the IDEA claims that they had pursued in the prior impartial hearing, and for which they had already obtained relief in the IHO Order. Dkt. No. 6. On March 13, 2019, the Court denied the School District's motion to dismiss because three of the alleged deficiencies in G.F.'s preschool program were sufficient to state a claim for an alleged violation of § 504. Dkt. No. 13. On January 21, 2021, Plaintiffs moved for summary judgment. See Pls.' Summ. J. Mot. On February 18, 2021, Defendants cross-moved for summary judgment. See Defs.' Cross-Mot. for Summ. J.

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Salahuddin v. Gourd, 467 F.3d

---

[5] Dawn Hussein testified that certified special education teachers are extremely scarce and rarely apply for short term substitute appointments. See Hussein Dec. at ¶¶ 16–21. Hussein also documents the School District's efforts to secure a certified special education substitute teacher during this time. See id.

263, 272–73 (2d Cir. 2006). The movant may meet this burden by showing that the nonmoving

party has "fail[ed] to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).

If the moving party satisfies its burden, the nonmoving party must move forward with

specific facts showing that there is a genuine issue for trial. Salahuddin, 467 F.3d at 273. In that

context, the nonmoving party must do more than "simply show that there is some metaphysical

doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are

insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.

1998).

The Second Circuit has established that on summary judgment motions "[t]he mere

existence of a scintilla of evidence in support of the [non-moving party]'s position will be

insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). "At the

summary judgment stage, a nonmoving party must offer some hard evidence showing that [his]

version of the events is not wholly fanciful." Id. (citation and internal quotation marks omitted).

Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are

insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar

Coll., 196 F.3d 435, 452 (2d Cir. 1999).

In applying the summary judgment standard, the district court should not weigh evidence

or assess the credibility of witnesses. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619

(2d Cir. 1996); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (credibility issues, which

are questions of fact for resolution by a jury, are inappropriately decided by a court on a motion for summary judgment).

## IV.   DISCUSSION

For the reasons that follow, summary judgment is denied as to both parties for all claims except for Plaintiffs' claim pertaining to the reduction of speech therapy. While the IDEA does not bar Plaintiffs from recovering in this action, the factual record presents a genuine dispute of material fact as to whether Defendants' various failures establish a prima facie case of discrimination under § 504. Section 504 prohibits an entity that receives federal financial assistance—for example, a school district—from discriminating against students solely on the basis of disability. See Gabel ex rel. L.G. v. Bd. of Educ., 368 F. Supp. 2d 313, 333 (S.D.N.Y. 2005). Unlike IDEA, which offers relief from inappropriate educational placement, § 504 offers relief from discrimination. See id.

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  A claim under § 504 requires evidence that "(1) the student is disabled; (2) the student is otherwise qualified to participate in school activities; (3) the school or the board receives federal financial assistance; and (4) the student was excluded from participation in programs at, denied the benefits of, or subject to discrimination at, the school on the basis of her disability."  D.C. ex rel. E.B. v. New

York City Department of Education, 950 F. Supp. 2d 494, 518 (S.D.N.Y. 2013). Only the fourth

element, intentional discrimination, is at issue here.

To demonstrate discrimination under § 504, a plaintiff is not required to show personal

animosity or ill will. Id.  Rather, intentional discrimination "may be inferred when a school

district acts with gross negligence or reckless indifference in depriving a child of access to a

FAPE." Gabel, 368 F. Supp. at 334. In other words, "a plaintiff must demonstrate that a

school district acted with bad faith or gross misjudgment." Id. (citing Butler v. South Glens Falls

Cent. Sch. Dist., 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000)); see C.L. v. Scarsdale Union Free

School District, 744 F.3d 826, 841 (2d Cir. 2014) (holding that a § 504 claim "requires proof of

bad faith or gross misjudgment"); see also S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 290

(S.D.N.Y. 2007) ("[P]laintiffs can rely on Section 504 to claim that they are denied access to a

free appropriate education, as compared to the free appropriate education non-disabled students

receive, if they can show that defendants acted with bad faith or gross misjudgment in the

administration of disability services."). The requirement that a school district act with bad faith

or gross misjudgment in the special education context requires that, "a plaintiff must demonstrate

more than an incorrect evaluation or substantively faulty IEP to establish liability." R.B. ex rel.

L.B. v. Bd. of Educ. of City of New York, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000).

Although "case law from this Circuit suggests that the [school d]istrict's many failures

may rise to the level of gross negligence or reckless indifference sufficient to support a claim of

discrimination under Section 504," Gabel ex rel. L.G., 368 F. Supp. 2d at 335, the Second Circuit

distinguishes gross negligence and reckless indifference necessary to sustain a § 504 claim from

instances of school districts' "inappropriate decisions" that were "at most, errors in professional judgment." Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 153 (N.D.N.Y. 1997).

In this case, Plaintiffs argue that Defendants violated § 504 by refusing ABA therapy, providing fewer services than previously deemed necessary by denying ABA therapy, removing a 1:1 teaching aid, failing to provide a certified special education teacher, failing to conduct an FBA, reducing speech therapy services, and failing to implement G.F.'s IEP on various occasions. See generally Pls.' Mem. of Law.

### A. Plaintiffs' Summary Judgment Motion

#### 1. "Denial" of ABA Therapy

Plaintiffs move for summary judgement and allege that the record shows that Defendants denied G.F. ABA therapy. Id. at 15–21. Plaintiffs add that Defendants knew that such services were necessary to have meaningful access to an education, and acted with both reckless and deliberate indifference to G.F's needs. Id. at 21. A defendant acts with reckless indifference in violation of § 504 if it "(1) had knowledge that a harm to a federally protected right is substantially likely, and (2) failed to act upon that likelihood." Handicap Disabled of CNY 'No Justice' v. Domenico, No. 15-CV-734, 2018 US Dist LEXIS 108958, at *14 (N.D.N.Y. 2018) (citation omitted). A defendant acts with deliberate indifference when it denies a qualified disabled student a reasonable accommodation that the student needs in order to enjoy meaningful access to the benefits of public services. Alexander v. Choate, 469 U.S. 287, 301–02 (1985). Section 504 requires reasonable modifications to existing policies and programs so that a

qualified disabled student can enjoy "meaningful access" to public education. <u>Southeastern Community College v. Davis</u>, 442 U.S. 397, 410 (1979).

Summary judgement must be denied as to this claim as a genuine dispute of material fact remains regarding whether the School District categorically denied ABA therapy to G.F. Section 504 requires Defendants to reasonably accommodate G.F.'s disability unless such accommodation would "impose an undue hardship on the operation of its program or activity." 34 C.F.R. § 104.12. Although Defendants refused to add ABA to G.F.'s IEP and did not allow G.F.'s private ABA therapist to work with G.F. in school, Defendants dispute whether the factual record supports the conclusion that they failed to make efforts to "reasonably accommodate" G.F. with autism-related services. <u>See, e.g.</u>, Defs.' Resp. Mem. at 18. While Plaintiffs present evidence that the School District may have acted recklessly in its failure to implement ABA therapy, the evidence is not sufficient to conclude that no rational jury could find in favor of Defendants. <u>See</u> <u>BD v. DeBuono</u>, 130 F. Supp. 2d 401, 439–440 (S.D.N.Y. 2000) ("Evidence from which a finder of fact could conclude that defendants were aware of the benefits of a larger number of hours of ABA therapy and intentionally withheld more than ten hours from those plaintiff children for whom a greater number of hours was a necessity" presents an "issue [that] will have to be tried to a jury.")

Defendants have provided factual evidence that dispute their "hostility" to ABA methodology, and provide a legal basis supporting their reluctance to include ABA therapy on the IEP. Hussein Dec. ¶ 31.[6] Defendants dispute the conclusion that they were "hostile" to ABA

---

[6] CPSE Chairperson Dawn Hussein told Plaintiffs that she believed that ABA was a specific teaching methodology, and that based on her understanding, the CPSE was not required to put a specific methodology on the Student's IEP because teachers and related service providers need the flexibility to utilize multiple methodologies in the classroom to address a child's needs. Hussein Dec. ¶ 31.

therapy because they referred G.F. to preschool programs that used ABA methodology and did not have any objections to ABA therapists coming into the classroom. Id. ¶ 32. While Plaintiffs have provided a detailed record in their favor, during trial the School District may establish that their alleged failures as determined by the IHO may "amount to no more than mere negligence or professional misjudgment rather than deliberate indifference." Myslow v. New Milford Sch. Dist., 2006 U.S. Dist. LEXIS 9868, at *35 (D. Conn. Feb. 28, 2006). Because there is a genuine dispute of material fact as to whether the School District knew G.F needed ABA therapy and denied it, summary judgment is denied with respect to Plaintiffs' denial of ABA therapy claim.

2. *Fewer Services than Previously Deemed Necessary*

Plaintiffs allege that Defendants acted with deliberate indifference and violated G.F.'s rights under § 504 by providing G.F. with fewer services than they knew was necessary for him to have meaningful access to education. Pls.' Mem. of Law at 21.

a.   Augmentative and Alternative Communication Device

Plaintiffs allege that Defendants knew G.F. was non-verbal and needed a particular device or service to communicate, and his IEP's failure to recommend any assistive technology device or service for G.F. during the 2015-2016 and 2016-2017 school years provided him with fewer services than deemed necessary in violation of § 504. Pls.' Mem. of Law at 23. "A school district is required to provide a student with assistive technology if 'the child's IEP Team determines that the child needs access to those devices in order to receive FAPE.'" High v. Exeter Twp. Sch. Dist., 2010 U.S Dist. LEXIS 7965, at *16 (E.D. Pa. 2010) (citing 34 C.F.R. § 300.105(b)). Here, the School District disputes that they did not utilize assistive technology or provide G.F with assistive technology. Defs.' SMF ¶ 32. Specifically, the School District argues that G.F.'s IEP used an iPad, a Picture Exchange Communication System ("PECS"), and a

TalkBoard application to communicate in school. See id. Although the faulty IEP presents a strong likelihood that Defendants did not provide G.F. with the required communicative services, whether or not G.F. was provided fewer services than required remains disputed. See, e.g. Butler, 106 F. Supp. 2d at 420 (denying summary judgment to defendants because plaintiff presented evidence that defendants failed to develop IEPs for him and to provide him with certain special education services). Therefore, summary judgement as to this claim is denied.

### b.  FBA/BIP

Plaintiffs move for summary judgment on the claim that Defendants were deliberately indifferent to G.F.'s need of an FBA and a BIP. Pls.' Mem. of Law at 25.

Under New York regulations, a CPSE must, "in the case of a student whose behavior impedes his or her learning or that of others, consider strategies, including positive behavioral interventions, and supports and other strategies to address that behavior." 8 N.Y.C.R.R. § 200.4(b)(3)(i); see M.W. v NY City Dept. of Educ., 725 F.3d 131, 139–140 (2d. Cir. 2013). This may include an FBA, which identifies "problem" behaviors to determine "why a student engages in behaviors that impede learning and how the student's behavior relates to the environment." 8 N.Y.C.R.R. § 200.1(r). The purpose of an FBA is to ensure that the IEP's drafters have sufficient information about the student's behaviors to craft a plan that will appropriately address the behaviors and are conducted "as necessary to ascertain the physical, mental, behavioral and emotional factors which contribute to the suspected disabilities." Id. at § 200.4(b)(1)(v).

The Second Circuit has treated the failure to conduct an adequate FBA as a serious procedural violation because it may prevent a school from obtaining necessary information about the student's behaviors, leading to their being addressed in the IEP inadequately or not at all. See R.E. v. N.Y. City Dep't of Educ., 694 F.3d 167, 190 (2d Cir. 2012). The failure to conduct an

FBA will not always rise to the level of a denial of a FAPE, but when an FBA is not conducted, the court must take particular care to ensure that the IEP adequately addresses the child's problem behaviors. See M.W. v. New York City Dep't of Educ., 725 F.3d 131, 140 (2d Cir. 2013).

Here, Defendants knew that G.F. presented wandering, perseveration, and repetitive behaviors that were impeding his learning. Defs.' SMF ¶ 90. Despite this knowledge, Defendants did not conduct an FBA, and the IHO held that the failure to conduct an FBA denied G.F of a FAPE. Id. ¶¶ 90–91. Defendants assert in the transcript of the IHO that G.F.'s behaviors were adequately addressed through classroom behavioral interventions and through the various strategies on his IEP. See Dkt. No. 91 at 22. G.F.'s IEP specifically noted that he did not need strategies such as positive behavioral interventions, supports, or other strategies to address behaviors that impede others. See Dkt. No. 84-29 at 7. Evidence may suggest that the disparity between such behavioral issues in G.F. and his actual IEP demonstrate that the School District was recklessly indifferent when providing fewer services than necessary on G.F's IEP each school year. Plaintiffs have presented evidence that the School District was aware or should have been aware of G.F.'s behavioral issues. See, e.g., Dkt. No. 92-5 at 2-4 (neuropsychologist compiled various clinical evaluations that documented G.F. exhibiting restrictive or repetitive behaviors such as hand flapping, shaking, spinning, and jumping). However, both IDEA and New York State law grant discretion to school officials to decide whether a students' problematic behavior warrants an FBA. M.S. v. New York City Dep't of Educ., 2 F. Supp. 3d 311, 324 (E.D.N.Y. 2013). "A school district is required to conduct an FBA only where it determines that the behavior at issue is sufficiently serious as to 'impede' the student's learning and where such an assessment is 'necessary' to ascertain the causes of the problematic behavior." Id.

While the School District knew of G.F.'s problematic behavior, there is a likelihood that prior to the IHO holding, they believed such behaviors such as wandering were not serious enough to warrant an FBA, and their actions could have constituted an error in judgement rather than deliberate indifference. Thus, summary judgement as to this claim is denied.

### 3. *Reduction of Speech Therapy*

Plaintiffs move for summary judgement on their claim that Defendants failed to provide G.F. with appropriate speech therapy services by reducing the weekly service hours on his IEP. Pls.' Mem. of Law at 24. New York regulations require that instructional speech and language services "be provided to meet the individual language needs of a student with autism for a minimum of 30 minutes daily in groups not to exceed two, or 60 minutes daily in groups not to exceed six." 8 N.Y.C.R.R. § 200.13(a)(4). In the Second Circuit, failure to provide the required level of speech-language therapy has been found to be a serious procedural defect that deprived the student of important educational benefits. See L.O., 822 F.3d at 116.

Defendants knew that G.F. required speech services in order to have meaningful access to education and provided fewer services than required when they reduced the weekly service hours. Here, no reasonable juror could conclude that reducing services to G.F. after he failed to make progress does not constitute deliberate indifference. It is undisputed that G.F.'s IEP did not provide for a minimum of 30 minutes of speech and language services daily as required. Instead, during the 2015-2016 school year, Defendants only provided for 30 minutes of speech and language therapy four times per week, and then reduced the amount of speech therapy to 30 minutes three times per week the following school year. Defs.' SMF ¶ 41. Considering that G.F.'s hours were reduced after not meeting his goals in speech, the School District demonstrated deliberate indifference by providing fewer services than deemed necessary for

G.F's speech and language needs. For this reason, the Court grants summary judgment on Plaintiffs' claim that Defendants failed to provide G.F. with appropriate speech therapy.

### 4. Failure to Implement IEP

Plaintiffs allege that the record demonstrates Defendants failed to implement G.F.'s IEPs in deliberate indifference to G.F.'s rights under § 504 and move for summary judgment. Pls.' Mem. of Law at 25. Failure to implement a student's IEP established to provide disabled students with an equal opportunity to public education is reckless disregard to the student's rights and gross misjudgment. See Butler, 106 F. Supp. 2d at 421–22 ("it was not objectively reasonable for the defendants to believe that failing to develop IEPs which contained the required information . . . did not violate his statutory rights."); see also J.L. v. N.Y. City Dept. of Educ., 324 F. Supp. 3d 455, 468 (S.D.N.Y. 2018) ("While bureaucratic incompetence may have triggered DOE's failure to implement IEP services, it eventually morphed into a reckless disregard for J.P., M.C., and O.A.'s educational needs."). At the summary judgment stage, a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment. See D.C. ex rel. E.B., 950 F. Supp. 2d at 494.

Here, Plaintiffs' evidence that the School District may have acted recklessly when failing to implement G.F.'s IEPs, see Pls.' Mem. of Law at 24–27, is not sufficient to conclude that "no rational juror" could find in Defendants' favor, and find that Defendants were not deliberately indifferent to G.F.'s rights. Defendants' failures prior to the IHO could have merely resulted from bureaucratic incompetence. Therefore, summary judgement with respect to this claim is denied.

### 5. Claims not Properly Before the Court

Plaintiffs' claims of discrimination involving 1) delivery of ABA therapy during the 2018-2019 and subsequent school years; (2) G.F.'s extended school year program during summer 2019, and (3) the New York Office of Special Education Quality Assurance findings all involve alleged wrongdoing after the Complaint was filed and are not properly before the Court. A party may not use his or her opposition to a dispositive motion as a means to amend the complaint. See Shah v. Helen Hayes Hosp., 252 F. App'x. 364 (2d Cir. 2007); see also Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases). Therefore, the Court will not entertain these claims raised for the first time in Plaintiffs' summary judgment briefing.

**B. Defendants' Motion for Summary Judgment**

*1. Defendants' Estoppel Argument is Meritless*

Defendants argue that the doctrine of estoppel bars Plaintiffs from recovering in this action. Defs.' Resp. Mem. at 20. The Court disagrees. Judicial estoppel, which is intended to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings," prevents a party in a judicial proceeding from taking a position contrary to one taken by the same party in a prior judicial, quasi-judicial, or administrative proceeding. Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997) (citing Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037–38 (2d Cir. 1993)). The doctrine of judicial estoppel applies where the prior statements were made in administrative or quasi-judicial proceedings. Id. at 72. "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner." Mitchell v Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d. Cir. 1999).

Here, judicial estoppel is not applicable because Plaintiffs have consistently advocated that G.F. required the clinically recommended amount of ABA therapy. See generally Dkt. No.

84-11. The Rehabilitation Act "creates a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2000). In 2015, Defendants were aware that Dr. Grassl recommended that G.F. receive intensive ABA therapy. Defs.' SMF ¶¶ 22, 23. Further, Plaintiffs' assertion that G.F. needed 30-40 hours per week of ABA therapy is not inconsistent with their claims in the IHO holding as they have consistently provided testimony that recommended G.F. needed more "individualized behavioral intensive instruction" and intensive interventions. See, e.g, Dkt. Nos. 84-11; 84-20. The IHO agreed with expert testimony provided by Plaintiffs when holding that G.F. needed, and was denied, interventions consistently provided at his young age and awarded Plaintiffs 240 hours of compensatory 1:1 ABA services for G.F. IHO Decision at 24, 32. Intensive ABA treatment is typically provided in structured therapy sessions of 30 to 40 hours of ABA therapy per week. Pls.' SMF ¶¶ 14, 15 Defs.' SMF 14, 15. Defendants point out that the IHO holding ordered G.F's IEP to include at least one 45-minute session of direct ABA Therapy services daily. Defs.' Resp. Mem. at 19. However, the IHO set a minimum of 45 minutes on direct ABA therapy in school; it did not set a ceiling. The IHO did not take a position contrary to the Plaintiffs. Therefore, the doctrine of estoppel does not bar Plaintiffs from recovering against the Defendants in this action.

 2. *ABA Therapy*

Defendants' motion for summary judgment on Plaintiffs' denial of ABA therapy claim must be denied. The Court cannot conclude as a matter of law that the School District's actions did not rise to the level of reckless indifference or gross misjudgment. Here, a rational juror could conclude that Defendants chose to ignore the scientific and medical evidence supporting the provision of intensive ABA therapy to G.F. in school, even though various experts agreed

that without intensive ABA therapy services in school, G.F. would not be able to make social and academic progress, and that this decision rises to the level of gross negligence or reckless indifference. See Dkt. No. 91-10, ¶¶ 23–24, 67, 88–89; see also Gabel, 368 F. Supp. 2d at 335 ("I can only grant the District's motion if I conclude, as a matter of law, that no reasonable juror could find that the District's numerous errors . . . do not rise to the level of gross negligence or reckless indifference. Frankly, I cannot make such a finding.").

### 3. Removal of 1:1 Teaching Assistant

Defendants move for summary judgment on Plaintiffs' claim that the CPSE's removal of the 1:1 teaching assistant from G.F.'s preschool IEP without parental consent amounted to a § 504 violation. Defs.' Resp. Mem. at 24. The Court disagrees. Removing the 1:1 teaching assistant from G.F.'s 2017-2018 IEP without parental consent may rise to the level of gross negligence or reckless indifference sufficient to support a claim of discrimination under § 504. See Gabel ex rel. L.G, 386 F. Supp. 2d. at 336 (finding that a school district's recommendation that a student education committee had recommended a program with a 12:1:1[7] ratio "may in itself constitute the type of gross negligence or reckless indifference Section 504 is meant to address").

Here, it is undisputed that Defendants knew that G.F. needed 1:1 teaching assistant support, yet they failed to provide it to G.F. during the 2016-2017 and 2017-2018 school years. The IHO found that G.F. needed a full-time teaching assistant and that the School District did not provide one in the 2016-2017 and 2017-2018 IEPs. IHO Decision at 25. The IHO then concluded that Defendants' failure to provide G.F. with a full-time 1:1 teaching assistant denied G.F. a FAPE. Id. Further, Defendants recommended the SPICE program to Plaintiff knowing that

---

[7] This is twelve students to one teacher and one paraprofessional.

SPICE could not offer a full-time 1:1 teaching assistant to work with G.F. See D.C. ex rel. E.B., 950 F. Supp. 2d at 494 (a school district recommending placement for a child that they knew would not accommodate a student's allergy and failing to provide an alternative placement could constitute reckless indifference under § 504). Summary judgement on behalf of Defendants must be denied despite Defendants' claim that the 1:1 teacher was removed to accommodate ABA therapy, as the record demonstrates that Defendants may have knowingly provided G.F with fewer services than previously deemed necessary.

### 4.   Absence of Certified Special Education Teacher

Lastly, Defendants move for summary judgement regarding the absence of a certified special education teacher in G.F.'s classroom because they operated in good faith. Defs.' Resp. Mem. at 18. The IHO held that the lack of a special education teacher for more than one quarter of a school year is a material failure to implement G.F.'s IEP that denied the student a FAPE. IHO Decision at 27– 28. As stated previously, "[something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504." S.W. by J.W., 528 F. Supp. 2d at 289; see also Freydel v. New York Hosp., 242 F.3d 365 (2d Cir. 2000) (summary order) (finding no violation even where plaintiff "was clearly denied the interpreter services she required and was entitled to under the law" because she "failed to present sufficient evidence to persuade a reasonable jury that [defendant] acted with deliberate indifference to the likelihood of such a violation").

Here, summary judgment is denied because Defendants have failed to present material facts beyond the IHO's holding that they acted in good faith in securing a substitute teacher. While they have provided evidence of the difficulty in finding a long-term substitute teacher with a special education license, Hussein Dec. at ¶¶ 6–21, there is nothing in the record beyond their

apparent good faith effort to find a replacement to accommodate G.F's IEP. Because there is a genuine dispute of material fact, summary judgment is denied with respect to the absence of a certified special education teacher claim.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 84) is **GRANTED in part and DENIED in part**. Summary Judgment is granted on Plaintiffs' claim pertaining to the reduction of speech therapy and denied in all other respects; and it is further

**ORDERED**, that Defendants' cross-motion for summary judgment (Dkt. No. 91) is **DENIED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      August 12, 2021
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge