UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT F., *et al.*,

                              Plaintiffs,

    -against-                                        5:18-CV-00594 (LEK/ATB)

NORTH SYRACUSE CENTRAL
SCHOOL DISTRICT, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs Robert F. and April F. on behalf of themselves and their minor son, G.F., bring this action against defendants North Syracuse Central School District and the North Syracuse Board of Education (together, "Defendants"), alleging discrimination on the basis of disability in violation of § 504 of the Rehabilitation Act, 42 U.S.C . § 794. Dkt. No. 1 ("Complaint").

Presently before the Court is Defendants' motion to exclude the expert reports and testimony of Plaintiffs' experts, Dr. Andy Lopez-Williams, Dr. Alison Schonwald, and Dr. Kenneth Reagles. Dkt. Nos. 92 ("Motion"); 92-1 ("Defendants' Memorandum"); 92-5 ("Lopez-Williams Report"); 92-7 ("Schonwald Report"); 92-8 ("Reagles Report"); 95 ("Opposition"); and 99 ("Reply"). For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.    BACKGROUND**

A detailed account of this case's facts and procedural history can be found in the Court's August 12, 2021 summary judgment decision, Dkt. No. 100 ("August 2021 Memorandum-Decision and Order").

## III.     LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, the Court is charged with a "gatekeeping" obligation with respect to expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). The trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill, with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). "Generally speaking, expert qualifications are liberally construed." Rondout Valley Cent. Sch. Dist. v. Coneco Corp., 321 F. Supp. 2d 469, 474 (N.D.N.Y. 2004) (citations omitted).

"Under Daubert, factors relevant to determining reliability include the theory's testability, the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to standards controlling the technique's operation, the known or potential

2

rate of error, and the degree of acceptance within the relevant scientific community." Restivo v. Hessemann, 846 F.3d 547, 575–576 (2d Cir. 2017) (internal quotation marks and citations omitted). The reliability inquiry is a "flexible one," Daubert, 509 U.S. at 594, and the factors to be considered "depend[] upon the particular circumstances of the particular case at issue," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Amorgianos v. Natl. R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." Id. In other words, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). "Frequently, though, 'gaps or inconsistencies in the reasoning leading to [the expert's] opinion . . . go to the weight of the evidence, not to its admissibility.'" Restivo, 846 F.3d at 577 (quoting Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001)).

**IV.    DISCUSSION**

The Court examines in turn each of Defendants' challenges to Plaintiffs' experts.

**A.  Dr. Andy Lopez-Williams**

Dr. Lopez-Williams "was retained as an expert in this case to conduct a forensic evaluation of G.F. to determine G.F.'s current and future level of functioning." Opp. at 3. Defendants raise three challenges to Dr. Lopez-Williams' testimony and report: (1) his opinions

3

are contradicted by his own agency's prior Applied Behavioral Analysis ("ABA") service recommendations[1]; (2) his opinions regarding causation and damages are not supported by any peer-reviewed literature; and (3) there is no scientific basis for him to offer any opinion regarding G.F.'s "neuroplasticity." Defs.' Mem. at 8–11. The Court finds that Dr. Lopez-Williams' opinion and testimony is not precluded.

*1. Agency Service Recommendations*

Defendants assert, without providing any supporting case law, that Dr. Lopez-Williams' report and testimony should be precluded because there is incompatibility between his opinion and the prior treatment recommendations of Dr. Lopez-Williams' own agency. Plaintiffs contend that this argument is both contrary to the facts and the law. Opp. at 8. Specifically, they contend that contradictions to an expert's opinion do not warrant exclusion. Id. at 9. The Court need not resolve whether there is a contradiction because even if there is one, that alone does not warrant exclusion. Cf. In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 427 (S.D.N.Y. 2016) ("To whatever extent Defendants' public or internal statements conflict with its experts' opinions or its litigation positions in these cases, that will be a problem for Defendants that Plaintiffs may exploit via cross-examination and argument."); see also Miller v. Pfizer Inc., No. 99-2326-KHV, 2000 WL 968792, at *2 (D. Kan. June 26, 2000) ("Defendant also complains that Dr.

---

[1] Defendants also claim that Dr. Lopez-Williams' "opinions will not assist the jury in understanding any issues that are relevant to Plaintiff's Section 504 claim and his report and testimony should be excluded on this basis." Defs.' Mem. at 9. In light of the Court's recent decision, August 2021 Memorandum-Decision and Order, granting Plaintiffs' motion for summary judgment in part and denying Defendants' cross-motion for summary judgment in its entirety, the Court cannot conclude that the opinion is irrelevant to the Section 504 claims. After carefully reviewing the expert report, the Court is satisfied that Dr. Lopez-Williams will assist the jury in this case.

Silverman's opinion that Zoloft is associated with suicide contradicts statements which he has made in certain published works. This does not make his current opinion inadmissible. Defendant can sufficiently point out any contradictions on cross-examination.") (citing Daubert, 509 U.S. at 596)).

### 2. No Peer-Reviewed Literature

Defendants next assert, again without citing any case law, that there is no peer-reviewed research to support Dr. Lopez-Williams' opinions regarding causation and damages. Defendants' expert states in his declaration that "the essential lack of long-term follow up studies means that the field does not yet know whether early intensive ABA treatment results in a statistically significant likelihood of the type of optimal outcomes suggested in the complaint and by the Plaintiffs' experts." See Dkt. No. 92-2 ¶ 28. The Court is reminded by the Supreme Court's admonition that the absence of peer-reviewed literature is only one factor to consider: "[i]t might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist." Kumho Tire Co., 526 U.S. at 151; see also Peerless Ins. Co. v. Broan-NuTone LLC, No. 10-CV-0868, 2012 WL 1288196, at *2 (D. Conn. Apr. 16, 2012) ("Though the lack of peer review of these opinions may be explored on cross examination, the absence of peer review alone does not warrant excluding the testimony [of the experts].").

Moreover, Dr. Lopez-Williams highlighted a recent study concluding that early intensive ABA treatment results in positive effects over a span of nearly ten years. See Dkt. No. 93-3 ¶ 21. Defendants' expert disagrees with the significance of the recent study. See Dkt. No. 99-1 ¶ 18. In

his report, Dr. Lopez-Williams bases his opinion on scholarly references and forensic evaluation of G.F. See generally Lopez-Williams Report.

Even if there is an absence of peer-reviewed literature on the long-term effects of early intensive ABA treatment results, the Court finds, after reviewing the record and literature provided by both parties, that Dr. Lopez-Williams' opinion rests on a sufficiently reliable foundation of professional studies and clinical experience. Once again, Defendants may exploit any apparent lack of peer-reviewed literature on cross-examination.

### 3. Neuroplasticity

Finally, Defendants assert that there is no scientific basis for Dr. Lopez-Williams to offer any opinions regarding G.F.'s neuroplasticity. Plaintiffs, on the other hand, frame Defendants' argument as a disagreement amongst experts. Opp. at 13. The Court finds that Dr. Lopez-Williams' opinions regarding neuroplasticity should not be excluded.

This case is complicated by the fact that both experts acknowledge that it is not scientifically possible to measure one's neuroplasticity and Dr. Lopez-Williams never measured G.F.'s neuroplasticity. Defs.' Mem. at 10–11. Even though neuroplasticity is currently not objectively verifiable, the Advisory Committee to Rule 702 recognized:

> Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise.

Fed. R. Evid. 702, Advisory Comm. Notes (emphasis added).

In his report, Dr. Lopez-Williams noted that "[p]ractice parameters for children with Autism Spectrum Disorder highlight the importance of intervention to begin as early as possible in development when a child is diagnosed with Autism Spectrum Disorder" and "[t]his emphasis on early intervention is driven by the evidence regarding critical periods of neuroplasticity and the associated gains that are largely limited to such critical periods." See Lopez-Williams Report at 7. In this case, the scientific impossibility of measuring neuroplasticity should not preclude expert testimony, especially since Defendants cite no case law for that proposition and Dr. Lopez-Williams' report cites to one scholarly paper confirming that there are indeed critical periods of neuroplasticity. See id. at 9 (listing "Autism as the early closure of a neuroplastic critical period normally seen in adolescence" by Berger, J.M., Rohn, T.T., & Oxford, J.T as a citation); see also United States v. Bonds, 12 F.3d 540, 558 (6th Cir. 1993) ("Daubert requires only scientific validity for admissibility, not scientific precision."). Thus, questions about G.F.'s neuroplasticity go more to the weight than to the admissibility of the evidence, which Defendants can explore on cross-examination.

### B. Dr. Alison Schonwald

Dr. Schonwald "was retained as an expert in this case to provide expert opinions related to G.F.'s developmental disorder and treatment in the context of her training and experience in Developmental Behavioral Pediatrics." Opp. at 3–4. Defendants raise slightly different challenges to Dr. Schonwald's testimony and report: (1) conclusions regarding G.F.'s long-term prognosis are not offered with a reasonable degree of scientific certainty; and (2) similar to Dr. Lopez-Williams, there is no scientific basis to offer expert opinions regarding G.F.'s

7

"neuroplasticity." Defs.' Mem. at 11–13. The Court excludes only the portion of Dr. Schonwald's opinion and testimony that discusses G.F.'s long-term prognosis.

### 1. Long-Term Prognosis

Dr. Schonwald opined the following in her report:

> In my career, I have evaluated and diagnosed children around the same age as [G.F.] whose autism was severe, who then received 20-40 hours of ABA therapy each week and returned to see me with remarkable gains in communication and learning. I have had patients who present as [G.F.] did at a very young age, received intensive intervention, and became functional young adults with relationships and jobs. <u>It is possible</u> that [G.F.'s] trajectory would have been far more reassuring had he received intensive ABA as soon as possible after his diagnosis was made, and according to best practice standards.

<u>See</u> Schonwald Report at 14 (emphasis added).

Defendants argue that Dr. Schonwald's opinion is speculative, and to the extent that the opinion is any more concrete, Defendants contend that "there is no peer-reviewed literature that provides any evidence regarding the probable long term (e.g., adult) outcomes for autistic children who receive intensive ABA therapy compared to autistic students who do not receive such therapy." Defs.' Mem. at 11–12. Plaintiffs dispute that Dr. Schonwald's opinion is speculative as it "relates directly to her experience with the relevant populations, the treatment recommended, and the literature in support thereof." Opp. at 16. The Court agrees with Defendants and need not reach their alternative argument.

"Opinions merely expressing 'possibilities' do not suffice to support the admissibility of expert testimony." <u>Soldo v. Sandoz Pharms. Corp.</u>, 244 F. Supp. 2d 434, 526 (W.D. Pa. 2003). Dr. Schonwald's assertions that she had similar patients to G.F. who benefitted from early,

8

intensive ABA therapy does not support that G.F. would have also benefitted from early, intensive ABA therapy. See Saldana v. Kmart Corp., 260 F.3d 228, 234 (3d Cir.2001) ("the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way"); see also Dunn v. Sandoz Pharms. Corp., 275 F. Supp. 2d 672, 681 (M.D.N.C. 2003) ("Dr. Kulig's assertion that because bromocriptine is an ergot alkaloid and may behave like other ergot alkaloids and cause vasoconstriction simply does not support the proposition that Parlodel causes stroke in postpartum women.") (emphasis in original). Thus, the Court excludes the portions of Dr. Schonwald's opinion and testimony discussing G.F.'s long-term prognosis.

    2. *Neuroplasticity*

As with Dr. Lopez-Williams, Defendants attempt to preclude Dr. Schonwald from offering any expert testimony on neuroplasticity. For largely the same reasons described in Section IV(A)(3), Dr. Schonwald is not precluded in this regard and Defendants can explore the issue of G.F.'s neuroplasticity on cross-examination.

**C. Dr. Kenneth Reagles**

Dr. Reagles was retained as an expert to calculate G.F.'s economic losses. Opp. at 4. Plaintiffs admit that Dr. Reagles relied on Dr. Schonwald's opinions. See id. at 17 ("Dr. Reagles relied on the opinions of Dr. Lopez-Williams and Dr. Schonwald and rendered his own expert opinion within the realm of his expertise about Plaintiff G.F.'s future earnings potential and other economic damages."). Now that Dr. Schonwald's opinion and testimony discussing G.F.'s long-term prognosis is precluded and Dr. Reagles depended on this opinion, the Court must similarly preclude Dr. Reagles' report. See In re M/V MSC FLAMINIA, No. 12-CV-8892, 2017 WL

3208598, at *5 (S.D.N.Y. July 28, 2017) ("experts may rely on one another, but they may only do so if the requisite standards for reliability are met each step of the way. If one expert's opinions are built upon a foundation laid by another, reliability of the latter requires reliability of the former.") (footnote omitted); see also McNamara v. Kmart Corp., 380 F. App'x 148, 154 (3d Cir. 2010) ("Because McKenzie was not permitted to testify about these expenses, Johnson's testimony, which was dependent on McKenzie's, was also properly excluded.").

"On balance, and in consideration of its due process rights, the [C]ourt is loathe to leave [Plaintiffs] stripped of any damages expert testimony whatsoever." Dynetix Design Sols., Inc. v. Synopsys, Inc., No. 11-CV-05973, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013). Because of this, the Court will permit Plaintiffs the opportunity to offer a new expert report on damages. Id. Although there is currently no scheduled trial date, Plaintiffs shall tender any such report on or before **October 16, 2021** in accordance with the guidance in this Memorandum-Decision and Order.

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion to preclude (Dkt. No. 92) is **GRANTED in part and DENIED in part**. The portions of Dr. Schonwald's opinion and testimony discussing G.F.'s long-term prognosis are **EXCLUDED**, and Dr. Reagles' opinion and testimony is **EXCLUDED**. The rest of Dr. Schonwald's testimony and Dr. Lopez-Williams' opinion and testimony may proceed; and it is further

**ORDERED**, that Plaintiffs can submit a new expert report on damages on or before **October 16, 2021** in accordance with the guidance in this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 16, 2021
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge